Let's now turn to the second case in the calendar, 20-3758, Johnson v. Pacheo. And for the appellant, we have Ms. Green-Stark. Good afternoon. Can I just ask you, I said Pacheo, but when I looked at the documents, it seemed to me that might be a typo, that the last name is actually Pacheco, is that right? That is correct. That was the spelling we had originally been provided. Okay. I just want to make sure I'm getting people's names right. So please, Ms. Green-Stark, I understand you'd like to reserve two minutes for rebuttal? Yes, Your Honor. Okay. We'll give you, don't worry. I know the clock is going down, but I'm going to give you the full eight minutes now. Thank you. May it please the court, my name is Lissa Green-Stark, appearing for plaintiff appellant Stephanie Johnson. Ms. Johnson's case involved the claim of excessive force asserted pursuant to section 1983. Ms. Johnson's claims went to trial in the Southern District of New York. And this appeal broadly concerns the district court's rulings on essentially four evidentiary issues that Ms. Johnson submits was an abuse of discretion. At its core, the trial below involved one question, was Ms. Johnson subjected to excessive force when she was as only defendants, Pudlovitz and Gutierrez claimed at trial. The district court's erroneous rulings collectively excluded admissible corroborative and contemporaneous evidence, which born critical issues at trial. It also allowed evidence to be submitted at trial, which also born critical issues regarding Ms. Johnson's level of intoxication, her physical evidence that came in or was excluded affected Mrs. Johnson's substantial rights. And under these circumstances, it cannot be said that the jury was not swayed by these errors. With that, I'll turn to the first, the primary issue that was raised on appeal, which is the district court's ruling that 15 statements contained within the medical records placed in evidence were hearsay. The admissibility of evidence under rule 8034 is ultimately a question of statutory interpretation. And specifically what the statute state states is that to fall within the hearsay exception, it must be shown that the statement is made for and is reasonably pertinent to medical diagnosis or treatment and describes a medical history past or present symptoms or sensations, their inception, or their general cause. Counsel, why would it be? Why would it matter to a doctor who is providing treatment, whether she fell, or whether she was pushed? She had the same perfectly obvious injury, which is, which is a torn eyelid, which required two would note for the Jacobi records, and I think this is a point that we would like to make the sort of two separate categories of statements. And the first are those that were made at Jacobi Medical Center, where the primary purpose of her treatment was not the stitches, but rather an assessment of her emotional state or psychological state. Was she suicidal? Was she not? And as other circuits have recognized statements regarding one's emotional state regarding one's emotional injuries are admissible under this rule. And in this context, Miss Johnson's statements at Jacobi and Dr. Gerard's statements that were relayed to Jacobi all went to what was she upset about at that moment. And that is relevant to assessing whether or not she's suicidal. Is she, if the state, if the record said Miss Johnson is presenting as tearful because she's feeling depressed and wants to kill herself, that would likely lead to her being admitted. But here she's saying, I am the record support that she was tearful, not because of that, but because she had been mistreated by police because she had been hurt by police. That is relevant to assessing whether or not she should be admitted to the hospital and needed further care. And so, particularly in the context of the Jacobi records, her statements about who, what was upsetting her, who was upsetting her. These statements were taken down for the purpose of assessing her mental state and assessing whether or not she needed a higher level of a care of level, a higher level of, of care, sorry. And notably the ER doctor who took down these statements, her final diagnosis was not about the stitches. It wasn't, this is a woman who has a stick needed stitches on her head. It was that she suffers from depressive disorder and that she's being CPEP. And so all of these issues, all of these issues that were, were, that were brought up during her treatment were relevant to that assessment, whether she needed to be transferred to CPEP, what needed to be done. And also could reasonably be relied on, excuse me. I'm not sure I understand the relevancy of that at all. The police defense was not that she tried to hurt herself because she was suicidal. And so to that extent, the question of whether she was suicidal, which was linked to her cancer diagnosis seems to me to be irrelevant completely here. What am I missing? Well, the relevance is the, is what the statute requires for a statement to be admissible. Are you talking about the rule of evidence when you talk about the statute? You're talking about the rule of evidence, right? Correct. The rule 803. And I understand I use the word statute, but regard the law says that it's that the rules of evidence, it's still ultimately a question of statutory interpretation, meaning you go to the words of the rule to determine whether something's admissible. There again, how the district court construes it and applies it in the context of the case, having also to deal with rule 403 is a matter that gets considerable deference. No. Your honor. Yes, it does get deference, but if the legal interpretation of whether the medical assessment of her possible psychiatric situation was relevant at all here. I mean, nobody is suggesting the defense is not in any way suggesting that she injured herself in a suicide attempt, but the question for whether the statements are admissible is whether or not there's enough indicia of reliability for them to be accepted from the hearsay rules. And here, what the stack with the rule States is that if a statement is, is reasonably pertinent to medical diagnosis, and that can be to the treatment of mental health and mental health diagnosis, and it describes present symptoms or sensations, their inception, their general cause, then it is a statement that can be deemed reliable and is then admissible. And so whether or not, if it's relevant, it, yes, it is relevant in that these, well, first of all, these, these statements were certainly relevant to the extent that they and that she had not fallen. And regardless, the reliability of these statements is what matters in whether or not they should come in under this, this rule. And the, the fact that they, it meets the stack, the, the rule. And if you look at just the statutory interpretation of this, are these statements about the cause of her emotional state? Yes. Was it relied upon by reasonably relied all of the evidence support that it was in determining in, in determining how the doctors treated her and releasing her and not admitting her for a further suicide assessment or out of further concerns that she might be suicidal. It meets the rule and therefore it should have been admitted. I know I did reserve time. So I. And you've got an extra 30 seconds that I stole from you at the beginning. You can use it now, or you can, you can save it up for your rebuttal as you like. Well, I would just say that also many other circuits have looked at this issue, whether statements such as assaulted or beaten, whether those go to cause versus fault have found that it goes to cause and that the, the black letter of the rule is that statements about the cause or inception of injuries of ailments are admissible under the rule. And so all of these statements that did not go to fault should have been allowed as reasonable, sorry, as, as reliable statements that were made to medical provide providers under the rule. Okay. All right. Well, you've reserved two minutes for rebuttal. Why don't we go ahead and hear counsel for the appellee? Let's see. Ms. Carlin. Yes. Good afternoon. May it please the court. Antoinette, excuse me. I'm a little under the Antoinette Carlin for the defendants. The court did not abuse its discretion in redacting the medical statements. Sorry. I just want to stress initially that the bulk of these statements are like wholly generic statements that are clearly fault-based. So the majority are mistreated by altercation with police and other than attributing fault that doesn't in any way, it doesn't describe the cause of any injury. It doesn't describe any symptoms. I mean, let me ask you this. I mean, she is submitting to a psychological evaluation as to why and the extent to which she is suffering a depression. There are a lot of reasons that she might be depressed, but surely it would matter if she had been assaulted. And if she says, I'm very upset, I was assaulted. Why wouldn't that matter to someone who is evaluating her medical condition? Because for one thing, it could be an alternative basis for accounting for her depression and for her psychological distress. And then it becomes useful to corroborate her statement that she was that was made to the triage nurse that I think it was that she was mistreated and hurt by the NYPD. But here, so a lot of the cases where they allow statements like that in due to being treated for mental health issues and stuff, this, she wasn't seeking therapy, right? In all those cases, they were seeking therapy and the cause of being assaulted by the police was maybe something that they were being treated for because that emotionally upset them. But here, the, the psychiatrist called and requested a suicide assessment before any of this stuff happened. So that's why she was there for this too. I mean, she was there to get the laceration treated, but in terms of the actual mental health issue, it was a suicide assessment based on what the psychiatrist said, which happened before the incident. Counsel, I guess I'm not sure where you're going with this. Are you saying that, yes, the diagnosis related properly to her mental state, but no, the diagnosis was not allowed to account for anything that had happened to her after the psychiatrist had called in? No, no, of course it can. Excuse me. What if she had slit her wrists on the way to the hospital? Are you saying that that would have been irrelevant because it had not happened by the time the psychiatrist called in the 911 call? No, not at all. So why would it not? So why would it not be relevant if you're trying to draw a temporal distinction? Why would it not be equally relevant that on the way to the hospital or right before she came to the hospital, she was beaten by police. And yet you think it would be relevant if she had slit her wrists. I don't understand the temporal distinction you're trying to draw. So my point is that the reason why she was being assessed as a suicide risk was stuff that took place before. And then when she got there, when she was actually assessed, they never discussed anything about being mistreated. And if you look in the medical history, again, counsel, I'm not sure I understand your point of why it matters. Maybe the doctors were lousy doctors. Again, take my example that she had slit her wrists in the ambulance coming over. And let's say the doctors had failed to ever talk to her about it, but it came up and it was in the treatment notes. Are you saying that the fact that the doctors didn't ask her about that makes it irrelevant? I think that if she, if the assessment, the diagnosis does not discuss that, then yes, it is. Well, what if she said, so no, no, wait, wait. So what if she had spilled her guts about why she's so depressed? She has spent five minutes talking about her personal issues and her mental health issues and, and, and her use of psychotropic medications that had not worked. And yet they had not factored into the diagnosis. You're saying all of that statements that she clearly made to aid in diagnosis, she was hoping would be used for a diagnosis. Now don't become relevant because they were not actually factored into the diagnosis. Is that how it works? She didn't, that's not the situation here. She didn't, when she was assessed, she didn't make any statements nor was in the diagnosis. Was there anything discussed about it? But the larger point is that the statement mistreated and hurt by NYPD is, is a very generic statement and also wholly inconsistent with the statement she made immediately prior to that, where she said that she fell and hit, hit a door, hit a door. And that's how we don't know what arguments you might have had, had this come in, not to whether or not they're admissible. I want to clarify two things, one with respect to what you just said. First, is it your position that none of these statements that the plaintiff is saying should have been admitted were made in connection with her psychiatric examination? None? No. I didn't think so. I didn't think so. And second, the statements are not all of a kind. To the extent she said she was in an altercation with the police, I'm not sure how that assigns fault. I mean, she could have initiated the altercation, but the point is the injuries were the result of an altercation, not a fall. And why would that not have been admissible? So I think she made the statement about the altercation when she was sorry, when she was either being treated for after when she was having the stitches removed. No, no. She did make them then as well, but she made them initially, didn't she, in her initial examination? I think when she first got to the hospital after she fell, she said she was hit by a door. And then she said, although she doesn't apparently think she said this, but something to the extent of a 911 had to take a patient down and police jumped to me and then mistreated and hurt by NYPD. So those were all the statements that were made that day. And you don't think she made the statement that she was involved in an altercation with the police at that time? I think that was made either the following day when she went to the hospital with a headache and then she left, or it was made when she had the stitches removed. I'm pretty sure it was the following day when she went to the hospital. Well, let's assume that it wasn't. Let's assume it was in her first appearance. Would that not have been admissible? No, again, it doesn't describe the cause of an injury or symptoms. It's, I mean, to say, if you're being treated... It wasn't a fall. A fall would suggest, you know, either an accident or that someone was not stable on their feet. An altercation is something quite different. Yeah. So I would say that it's... In any event, it's admissible unless it fits into this trying to deal with cause. I mean, I don't understand your argument here. So I would say that here, any altercation, like if you're in an altercation and that's the cause of your injury, I think it would be something like you were hit in the face, right? But here, she never suggested that. She's pushed her down and then she hit her head on the floor. And so to that extent, I think that it wouldn't be admissible. But I think the larger point is that maybe it's a harmless error point, is that most of these statements were very generic and could be interpreted in a lot of ways. And the ones that were specific were fully inconsistent with each other. And with... Wait, wait, wait. Why is the inconsistency matter? Well, I'm just talking about harmless error here. So only the ones that favor you come in? I mean, that doesn't seem to be a very good way to run a question of they're inconsistent. And to the extent they favored you, they could come in. And to the extent that they favor them, it's harmless to keep them out. I don't understand your harmless error point. That wasn't what I was suggesting. I was saying that if they had all come in, that would be the other option. So they all come in. And when the motion was made to have the redactions, we specifically said that if they all come in, either all of them come in or all of them stay out. That's what we said. But if they all come in, we specifically said that we would use them to impeach her credibility because they're very inconsistent. I'm not sure it's anywhere in the record that she said she was she was hit by a door. Yeah, it is. I'm sorry. It's I think it's 162. Initially, when she got to the hospital, that was the first she said it twice when they asked her the cause of her injury. That was the first thing she said. I hit I hit my head in the door. Plaintiff doesn't argue that those should have been admitted. So maybe that's why. But I think it's 162 of the record. Excuse me. But I would just say that given the inconsistencies of her statement and that never once until trial did she actually say that it was that she hit her head on the floor after being pushed. These statements would have impeached her credibility. And there was a lot of undisputed evidence that supports the jury verdict here about her balance disorder, about her not using a walker at the time of the incident and the fact that she was highly intoxicated. So even if they should have been admitted, at most it was harmless error. OK, we've kept you past your time. If you want to give us one or two sentences just to tie it up. Sorry. OK. Or have a drink of water. I'm a terrible sore throat. No, unless you have any other questions, we would just suggest that they were the court did not abuse discretion. And to the extent that they were improperly admitted, it was clearly harmless error. OK, thank you very much. We'll hear from the appellant's counsel who's reserved some time. I guess I would just like to address one of the points about this question of whether a fall by accident versus an altercation could be relevant to treatment. And I submit it is relevant. The things that doctors may look into if they learned that she fell because she was intoxicated, if that's what she said to them, they may be discussing her ataxia. They may be have more concerns about fall risk, something that we often see in medical records. It is relevant to treatment. An altercation, however, doesn't call into question her ability, her balance or questions about fall risks. An altercation is something that could cause an injury to anybody. And so it may create a the impetus in a doctor to look into whether she has certain issues with a head injury. But they may not be concerned about something like a fall risk if she had said I had fallen. So these are things that are all relevant. These are things that doctors consider. They're assessing all of the facts and rendering treatment. And it should be the question isn't whether the statement was relied on by the doctor as defendants have sort of tried to suggest. And in fact, I think that goes to a point that you made, Judge Nardini, and that we made in our brief, which is if you tell a doctor something, but they fail to rely on it. Say I say, as we said in our brief, I'm allergic to penicillin, but they give me penicillin. Does that make that statement now inadmissible? That just would leave unworkable results. I also want to take a quick moment to touch on this issue about the hit by a door. Ms. Johnson never claimed she was hit by a door. The evidence was never that she was even near the door. Everyone agrees when the door opened, she was down the hallway. And this was addressed in our motions that the issue is not whether she was the issue is whether she said that she was. Well, and it's also not specifically attributed to her in the medical records. It says chief complaint, but it doesn't say that plaintiff stated that in other places in that record, it says plaintiff provided her weight plaintiff said this plaintiff, sorry, patient, I should say I'm using the back door. No one was hit by a door unless she she told him. Well, the triage, there's testimony that EMTs when they transfer care, they speak to the triage nurse initially. What does s slash p stand for? I'm looking at page 161, where it says hit by door, it's boxed in, it says s slash p. My understanding is that it's status post. What does that mean? Can you translate status post? It means presenting after having sustained, having that having that has occurred to them. But one other issue I'd like to kind of loop this in on is all of these questions, whether it was the statement was made by her whether it wasn't whether the statements were inconsistent, which arguably we say are not in fact, all of the statements, including that are more consistent with Miss Johnson's allegation that she was injured in some way by the police, their actions and that she fell on her own. But all of that goes to weight and not admissibility. If they wanted to, if the defendants wanted to make those arguments at trial, certainly they had a right to do so. But the central issue is that these statements were on central issues to this case, they bore on core issues, did she fall? Was she tackled? Similarly to some issues raised about intoxication? Sorry. I just want to ask you one more question before you conclude your argument. It seems to me that the reason this evidence was sought to be put before the jury was because it was consistent in the plaintiff's view with what she was saying at trial. And yet it's argued under 8034 rather than under 801 D one B as a prior consistent statement. Is there something that I'm missing about why it wasn't argued on that ground? Well, Your Honor, we did raise this in the briefs that it should also have been admitted under 801. And it's certainly so we have a plain error question, right? We do. But I think that this still meets all of the statutory requirements of 801 D and rule 103 East states that a court may take notice of a plan error. But that is that there are some inconsistencies in what the record shows. And I'm just wondering whether the 8034 argument was an effort to avoid coming to terms with the inconsistency and whether that was something the district court was entitled to consider in deciding even an 8034 decision to admit. Well, that's still sorry, there is also still the issue of 801 D one B, where there was multiple attacks on Miss Johnson's memory. And due to her level of intoxication, there was, I would say, I believe, five questions on cross error on that. My point is, just as the inconsistencies would have been relevant to an 801 D one B admission with why weren't they relevant to an 803 for admission? Well, I do think overall, they were consistent, we would submit and that they were consistent enough and consistent enough with Miss Johnson's statements at trial that they could be admitted under that, that aspect of this, the rule as well. She there's at no point and particularly when you look at how they are diametrically opposed to what defendants were arguing, that all everything that she said, supported regardless of any changes in the verbiage, whether it's altercation versus mistreated, it all supports that her injuries were caused by the police. And I think that that also goes to something that came up earlier, where you look at, say, the first statement at Jacoby, it's not that just that she was mistreated, but it's that she presented as tearful because she was mistreated. Things like that in the medical records really show how these go to her emotional state. Again, as I said before, the statements about an assault that is relevant to treatment. And if she had said that the injury was from something else that could have led to other treatment. And that's exactly the reason why these statements are considered reliable and should be admitted under the rule. And I think just to close, I would just say that it's not just this error, but it's the cumulative effects of all of the errors of allowing a levels of allowing this post and remote treatment record to come in, that it really didn't impeach Miss Johnson's statements at all, but did prejudice her because the defendants were allowed to make that argument at trial and excluding these other witnesses, just on the basis of waste of time. There was no argument that there was any kind of prejudice, nothing of that nature. And the absence of evidence that supporting anybody else, having observed her fall under these circumstances did corroborate her claims and should have been allowed to be presented to the jury. All of this together substantially affected Miss Johnson's rights. And that's why we submit she is entitled to a new trial. Thank you. Thank you both very much. We will reserve decision. Let's turn.